The Commonwealth of Pennsylvania ex rel. Frederick
W. Eilenberger and Isaac A. Gardner v. Milton Yetter
and Seeley Rosenkrans, Appellants.

*Corporations—Cumulative voting—State normal school—Election of trus-
tees—Act of May 20, 1857.*

Where the stockholders of a state normal school, organized under the
Act of May 20, 1857, P. L. 581, obtained a charter as a private corpora-
tion from the court of common pleas in 1893, the vote for the trustees of
such a corporation may be cumulated under article 16, section 4 of the con-
stitution, and the Act of April 25, 1876, P. L. 47.

Argued March 7, 1899. Appeal, No. 339, Jan. T., 1899, by
defendants, from judgment of C. P. Monroe Co., Sept. T., 1897,
No. 10, on verdict for plaintiff on trial without a jury. Before
GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Af-
firmed.

Quo warranto to determine the rights of defendants to the
office of trustees of the East Stroudsburg State Normal School.
The trial having been proceeded in to the point of the admis-
sion of the evidence of the certificate of incorporation granted

by the court of common pleas of Monroe county, on August 21, 1893, to the contributors or stockholders of the East Stroudsburg State Normal School, it was agreed by and between R. L. Burnett and A. R. Brittain of counsel for the relators and H. J. Steele and S. Holmes of counsel for the respondent, that the following facts may be considered by the court as having been duly proved, and the jury sworn in said case dispensed with and discharged; the court to pass upon the facts and declare the law in relation thereto; trial by jury being expressly waived by both parties to said action, under the provisions of the act of April 29, 1874, and supplements; either party reserving the right to appeal.

1. The East Stroudsburg State Normal School was organized under the act of 1857, in March, 1893.

2. Said school was recognized by the state as a state normal school in May, 1893.

3. Certain contributors to or stockholders of said school were granted the charter or certificate of incorporation by the court of common pleas of Monroe county, which has been offered and received in evidence on August 21, 1893, under the act of April 29, 1874, and its supplements.

4. The said relators F. W. Eilenberger and Isaac A. Gardner and the said respondents Milton Yetter and Seeley Rosenkrans were on May 3, 1897, and prior and subsequent thereto, and now are, stockholders of the said school.

5. Pursuant to law an election by the stockholders or contributors of the said school was held pursuant to a call regularly issued, in the chapel of said school, in the borough of East Stroudsburg, Pa., on May 3, 1897, at which election four trustees were to be elected and four state trustees were to be nominated, of whom two were to be selected by the superintendent of public instruction.

6. Said meeting of the stockholders so held on May 3, 1897, was organized by the election of James K. Fenner as president, and A. R. Brittain and Charles Warman as secretaries.

7. B. F. Morey was elected judge and H. S. Puterbaugh and William H. Voss tellers of said election, and said election officers were duly sworn according to law.

8. By the ballots cast at said election and by the tally list kept by the said tellers it appears there were cast for the rela-

tors, F. W. Eilenberger and Isaac A. Gardner, respectively, $291\frac{1}{2}$ and 285 votes. These votes having been voted cumulatively under the provisions of the constitution of 1874, article 16, section 4, and general corporation act of 1874 and supplements, by the stockholders voting them, and for Milton Yetter and Seeley Rosenkrans $174\frac{1}{2}$ and 166 votes, respectively. These last named votes having been cast directly, i. e., not cumulatively. These latter votes being a majority of the noncumulative votes cast.

9. The judge of the election, B. F. Morey, announced the result of said election as above stated; and further issued certificates of election attested by the tellers to the said relators, F. W. Eilenberger and Isaac A. Gardner. No certificates having been issued by the said judge and tellers to the said respondents, the said Milton Yetter and Seeley Rosenkrans, but James K. Fenner, president of said stockholders' meeting, decided that the four candidates having the highest number of votes not voted cumulatively were elected, and May 25, 1897, issued certificates of election to said Yetter and Rosenkrans.

10. On May 28, 1897, a meeting of the trustees of said East Stroudsburg State Normal School was regularly held at which the said Frederick W. Eilenberger and Isaac A. Gardner presented their said certificates of election, and demanded their seats as trustees of said school, and they were denied by the said board of trustees any recognition as trustees of said school, and have been so denied from that time to the present.

11. The respondents, Milton Yetter and Seeley Rosenkrans, were seated at said meeting of trustees on May 28, 1897, as trustees, and have exercised the office of trustees of said school from said May 28, 1897, to the present time.

12. If the stockholders at said election on May 3, 1897, had the right to cumulate their votes under the constitution of 1874 and general corporation law of 1874 and supplements, then the said relators, Eilenberger and Gardner, were duly and legally elected. If, on the other hand, the court should be of the opinion that the stockholders had not the right to cumulate their votes as aforesaid, then the said respondents, Milton Yetter and Seeley Rosenkrans, were duly and legally elected trustees of said school, and the said Eilenberger and Gardner were not elected.

Further facts were found by the court as follows:

1. By the certificate of incorporation referred to in above paragraph 3, it appears that the subscribers had associated and desired to be incorporated for the purpose of erecting a normal school for the professional training of young men and women as teachers for the common schools of the state in accordance with the provisions of an act of assembly approved May 20, 1857, and its supplements, in the fourth normal school district, composed of the counties of Northampton, Carbon, Monroe, Pike, Luzerne, Lackawanna and Wayne, on a piece of land of about eleven acres in the borough of East Stroudsburg, and were desirous of being incorporated agreeably to " An act to provide for the incorporation and regulation of certain corporations," approved April 29, 1874, and its supplements, and that the board of trustees should consist of eighteen members.

2. The defendants, Milton Yetter and Seeley Rosenkrans, are among the petitioners for incorporation, are two of those chosen trustees for the first year and are signers of the certificate of incorporation.

ALBRIGHT, P. J., of the 31st judicial district, specially presiding, filed the following opinion :

This is a proceeding by writ of quo warranto to determine the rights of each of the two defendants (and of each of the two relators) to the office of trustee of the East Stroudsburg State Normal School. By agreement, jury trial was waived, the facts were agreed upon—the court has stated as further facts what appears by the charter, which it was agreed was granted and was put in evidence. The question presented by the pleadings and the facts above stated is whether at the election for four trustees of the East Stroudsburg State Normal School on May 3, 1897, the cumulation of votes, which resulted in more votes for the two relators than for the two defendants, was authorized by law. But for the cumulation of votes for the relators, the defendants for whom no cumulated votes were cast would have been elected.

Relators contend that said election was an election for trustees or directors of a corporation created under the corporation act of 1874 and its supplements, and consequently the provisions of section 4, article 16 of the constitution and of the Act

of April 25, 1876, P. L. 47 (entitled to be a supplement to said act of 1874), applied, and cumulative voting was lawful. Defendants insist that said election was governed by the act of 1857 and its supplements, relating to state normal schools, and that said provisions concerning cumulative voting did not apply. The provisions of said article 16 of the constitution relate to private corporations, which term includes joint stock corporations. (Sec. 13.) Section 4 thereof declares : " In all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one candidate or distribute them upon two or more candidates, as he may prefer." Said act of 1876 provides that in all elections for directors, managers or trustees of any corporation, created under the provisions of the said act of 1874, or accepting its provisions, there may be voting as declared by said section of the constitution ; its further provisions explain the method of voting and declare that all such elections shall be by ballot, and that every share of stock shall entitle the holder thereof to one vote. In Pierce v. Commonwealth, 104 Pa. 150, it was held that said section of the constitution does not require legislation to give it effect, and that it applied to an election of directors of a railroad company. (Corporations to construct railroads are excepted from the power to incorporate by said act of 1874, and its supplements, sec. 2, act of 1874, and Act of May 24, 1887, P. L. 186.) In McLeod v. Central Normal School Association, 152 Pa. 575, it was decided that said association which was recognized as a normal school according to said act of 1857, and acting under a charter of the court of common pleas was a private corporation. The question whether said association was a public or private corporation arose under a rule to strike off a mechanic's lien on its buildings. Said question was distinctly raised and decided. It must be borne in mind that this is a proceeding requiring each of the defendants to show by what authority he exercises the office of trustee of the East Stroudsburg State Normal School. Power to challenge defendants' right in this form of proceeding exists by virtue of the first section of the Act of June 14, 1836, P. L. 621, which declares that a writ of quo warranto may be issued in case any question shall arise concerning the exercise of any office in any corporation created by authority of law and having the chief

place of business within the respective county. The averments in the suggestion for the writ bring the relator's case within said provision of said act of 1836. In the plea to the suggestion, defendants do not deny that the East Stroudsburg State Normal School is a corporation; they aver that they were legally elected trustees of the said corporation; that they use the rights of trustees of the said corporation; they deny, however, that said East Stroudsburg State Normal School was created by virtue of said corporation act of 1874, and by the said decree of this court of August 31, 1893, and assert that it was created in accordance with the provisions of the said act of 1857, and its supplements, and in no other manner. The issue is whether defendants lawfully exercise the rights of officers of a corporation—the corporation named the East Stroudsburg State Normal School—that is the name given by said decree of the court. Inquiry as to the validity of the charter granted by this court would be profitless; in this proceeding the court could not declare it void and annuled; such inquiry would be collateral; the charter could be vacated only in a direct proceeding for that purpose: Center Turnpike Co. v. McConaby, 16 S. & R. 140; Irvine v. Lumberman's Bank, 2 W. & S. 190; Dyer v. Walker, 40 Pa. 157; Freeland v. Penna. Central Ins. Co., 94 Pa. 504; Albright v. Lafayette, etc., Association, 102 Pa. 411.

Said Act of 1857, P. L. 581, and its supplements of February 15, 1872, P. L. 16, March 18, 1875, P. L. 12, April 12, 1875, P. L. 43, March 24, 1877, P. L. 37, provide, among other things, that the counties of the state shall be divided into normal school districts; than when not less than thirteen citizens shall, as contributors or stockholders, erect and establish a school for the professional training of young men and women as teachers for the common schools of the state, in accordance with the provisions of said act of 1857, such school may become entitled to the benefits of said act of 1857; that the pecuniary affairs of said schools shall be managed and the general control exercised by a board of trustees, whose officers shall be a president and a secretary, who shall, and a treasurer, who shall not, be a member of said board, to be chosen by the contributors or stockholders on the first Monday of May annually, but no contributor or stockholder shall have more than five votes at the election of trustees; that after said schools

have been recognized under said act of 1857 it shall be lawful for them to hold and use devises, gifts, grants or endowments of property; that said trustees shall have authority to bring suits in their names as trustees, and do all other things necessary for the recovery, use and application of such property; that the trustees shall annually report to the state superintendent of schools; that to entitle any of such schools to the benefits of said act of 1857 it shall possess certain requisites as to lands, buildings, professors, principal, model schools and the like; that each of said schools shall admit one student from each school district, at a cost of not more than five dollars for a term, to be paid by the district sending such student; that when the trustees of any school shall make application for the privileges of said act of 1857 the matter shall be proceeded with in a way prescribed, and the state superintendent may recognize such school as a state normal school; that certificates of graduation shall be issued; that the trustees shall be eighteen, twelve of them to be elected by the contributors or stockholders, four to be elected annually for three years, and six appointed by the superintendent of public instruction on nomination by the contributors or stockholders, two each year to serve for three years, such election and nomination to take place and be made on the first Monday of May annually; that seven trustees shall be a quorum, and all changes in by-laws and rules shall be approved by the superintendent of public instruction; the power and privileges of the two classes of trustees to be the same; a three-fourths vote to be required to sell or purchase real estate, or create a lien, or to expend money appropriated by the state, or to surrender the franchises of the corporation. (The last named provision is found in the Act of March 24, 1877, P. L. 37, which act is an amendment to the Act of April 12, 1875, P. L. 43, which provides, among other things, for eighteen trustees, and that seven shall be a quorum; said limitation to five votes is found in the third section of the act of 1875.)

The corporation act of 1874 declares that corporations created under its provisions shall have power to appoint and remove such subordinate officers and agents as the business of the corporation requires; to make by-laws not inconsistent with law. Among the purposes for which such corporations may be

formed is the support of any educational undertaking. The charter of an intended corporation shall set forth the purpose for which it is formed. The business shall be managed and conducted by the president, a board of directors or trustees, a secretary or clerk, a treasurer, and such other officers, agents and factors as the corporation authorizes for that purpose; the treasurer among other officers may be a director; the directors or trustees shall be chosen annually by the stockholders or members at the time fixed by the by-laws; the manner of such choice and of the choice and appointment of all other agents and officers shall be prescribed by the by-laws; the number of directors or trustees shall not be less than three nor more than fifteen; the members of the corporation may determine, fix or change within said limits the number of directors or trustees, a majority of the whole number to constitute a quorum. Stockholders may decide to elect directors for one, two, three or four years, and at all ensuing elections shall only elect the number necessary to take the place of those whose term shall then expire; the by-laws to be the law of the corporation subordinate to said statute, the charter of the same and the constitution and laws of this state and the constitution of the United States.

A corporation created under the act of 1874, and its supplements in its organization and government must conform to said statutes. In corporations formed under general laws it is no objection that the articles of association contain provisions not authorized by the act. If unauthorized provisions are added all acts done in pursuance of such will be void; but until the corporation is proceeded against for an abuse of its franchises, its rights as a corporation will not be affected by such unauthorized powers: Albright v. Lafayette, etc., Association, 102 Pa. 411. Its powers are to be gathered from said statutes rather than from the articles of association, and in case of a conflict the former must prevail: Booz's App., 109 Pa. 592. Any provision of the charter granted by this court on August 21, 1893, not permitted by the statutes under which the corporation was created, must give way to the statutes, and the specifications of the statutes in that regard must prevail. That is the case in this charter with the number of trustees; the lawful number is fifteen, not eighteen. Said charter is to be construed as if all

the pertinent provisions of said act of 1874 and its supplements were written in it, and whatever conflicts with the law is to be rejected as void.

(All the provisions respecting corporations above referred to were in force when this charter was granted.)

The specification of the purpose of the intended corporation, that it is the establishing of a normal school under the act of 1857 and its supplements, was not improper as an indication of the kind of educational undertaking proposed. But it must be taken that in all matters as to which the requirements of the act of 1874 and its supplements were different from those of the act of 1857 and its supplements, the former are the rule of action. Manifestly the election in question was an election for trustees under the charter granted by the court. It must be inferred that since the decree of incorporation the affairs of the school were conducted under the charter, for there is no evidence that the charter was abandoned, or that an organization under said normal school acts distinct from the organization under the charter was kept up.

In the agreement as to facts it is stated in May, 1893, said normal school was recognized as a state normal school, and that certain contributors and stockholders of said school were granted said charter by the court on August 21, 1893 ; also that the relators and the defendants were on May 3, 1897, and prior and subsequent thereto, and are now stockholders of said East Stroudsburg State Normal School. If the normal school associations provided for by the act of 1857 and its supplements are corporations then undoubtedly said constitutional and legislative provisions for cumulative voting applies to their elections for trustees. If that view of the character of said associations were taken the defendants would have no case. But I am of the opinion that they are not corporations. If the legislative intent had been to make them corporations it would have been so declared. It is not stated anywhere in said acts that such associations shall be corporations or bodies politic. The fourth section of the act of 1857 declares that the trustees shall have authority to bring suit in their name as trustees and do all things necessary for the recovery, use and application of the same. In said act of 1877, in providing for the number of votes necessary for certain purposes, is found the expression " or for the surren-

der of the franchises of the corporation." But the last named act confers no power; it simply repeals a requirement of the act of 1875 respecting a three-fourths vote of the trustees, excepting as to certain matters. A relinquishment of privileges conferred by the normal school acts, not the surrender of the franchises of the corporation, was meant. Referring to an unincorporated association as a corporation does not make it a corporation. A state normal school association that never became incorporated without doubt can act untrammeled by the laws governing corporations including cumulative voting. Its law is the act of 1857 and its supplements. The thought occurs that inasmuch as the corporation in question could lawfully have but fifteen trustees, that four were not to be elected in May, 1897. But it can be taken for granted that there then was occasion to elect four. No question in that regard has been raised. The issue is as to which two of the four contending persons were elected.

My conclusion is that the election in controversy was an election for trustees of a private corporation—the corporation created by the decree of this court of August 21, 1893—that at said election stockholders had the privilege to cumulate their votes and that the relators were duly elected.

### CONCLUSIONS OF LAW.

It is found that the defendants, Milton Yetter and Seeley Rosenkrans, each unlawfully holds and exercises the office of trustee of the East Stroudsburg State Normal School, and it is adjudged that each of said defendants be ousted and altogether excluded from said office, and that the relators recover costs from said defendants. Further, it is adjudged that, by virtue of an election held on May 3, 1897, each of the relators, Frederick W. Eilenberger and Isaac A. Gardner, was duly elected a trustee of the East Stroudsburg State Normal School, and that each of them shall hold said office for the term for which he was elected as aforesaid.

*Error assigned* was the judgment of the court.

*Russell C. Stewart*, for appellants.—It was clearly the duty of relators to have shown that the transformation, if any, from

a normal school organized under the act of 1857, as found by the court, to a corporation, was in proper form.

A case stated or a special verdict must contain all the facts upon which the judgment of the court is to rest. Nothing is to be taken by implication or intendment: McCormick & Son v. Royal Ins. Co., 163 Pa. 184; Northampton Co. v. Easton Pass. Ry. Co., 148 Pa. 282; Com. v. Equitable Beneficial Assn., 137 Pa. 412; Lewars v. Weaver, 121 Pa. 268; Centre Turnpike Co. v. McConaby, 16 S. & R. 140; Irvine v. Lumberman's Bank, 2 W. & S. 190; Dyer v. Walker, 40 Pa. 157; Freeland v. Penna. Central Ins. Co., 94 Pa. 504; Albright v. Lafayette, etc., Assn., 102 Pa. 411.

The relators must aver that this school is a corporation to obtain the advantage of the quo warranto Act of June 14, 1836, P. L. 621.

If it may be inferred from lapse of time and user, that a charter has been accepted, why can it not also be inferred that it was not accepted when everything was done according to the act of 1857, and not according to the act of 1874: Shortz v. Unangst, 3 W. & S. 45; Com. v. Cullen, 13 Pa. 133; Brown v. Fairmount Gold and Silver Mining Co., 10 Phila. 32.

If this school had been incorporated prior to the new constitution, cumulative voting, without some action on the part of the corporation accepting the benefits of the act of 1874, could not be used at all in its elections: Hays v. Com., 82 Pa. 518; Pierce v. Com., 104 Pa. 150; Baker's App., 109 Pa. 461.

*A. R. Brittain,* with him *R. L. Burnett,* for appellees.—Whilst normal schools are no doubt engaged in a most necessary and useful work, and have been valuable auxiliaries in the education of the masses of the people, the mere fact that they have been incorporated for this particular purpose, and are actually engaged in this work, will not, of itself, give them the essential qualities of a public corporation. Their charter is in form and effect that of a private corporation merely, their work is but indirectly for the public use, and they must be answerable for their debts and engagements under the same forms of procedure, and to the same extent, as other private corporations and individuals: McLeod v. Central Normal School Assn., 152 Pa. 575; Reynolds v. Reynolds Lumber Co., 169 Pa. 631.

It is not necessary to the right to cumulate votes, that notice of intention to do so should be given; the right so to vote is constitutional and unrestrained by any condition: Pierce v. Com., 104 Pa. 150 ; Hays v. Com., 82 Pa. 521.

In view of the radical change contemplated by the constitution of 1874 and the General Corporation Act of 1874, sec 10, P. L. 78, an intention to repeal by the act of 1875 so much of section 3 of the act of 1857 as limits the number of votes to five may be gathered from its repugnancy to the general course of constitutional revision and of subsequent legislation: Shaeffer v. Jack, 14 S. & R. 426 ; Brown's Est., 152 Pa. 401; Rhodes v. H. B. & S. Asso., 82 Pa. 180 ; Gwinner v. Lehigh & Delaware Gap R. R. Co., 55 Pa. 126 ; B. & L. Assn. v. B. & L. Assn., 159 Pa. 310 ; Emsworth Borough, 5 Pa. Superior Ct. 29.

The validity of a charter of incorporation cannot be inquired into collaterally, and least of all by a member who has enjoyed the benefit of its privileges: Rothschild v. Rochester, etc., R. R. Co., 1 Pa. C. C. R. 620 ; Freeland v. Penna. Central Ins. Co., 94 Pa. 513.

An inquiry as to the right of a company to act as a corporation can be had only at the suit of the state on information by the attorney general: Centre Turnpike Co. v. McConaby, 16 S. & R. 140.

PER CURIAM, March 27, 1899 :

The judgment in this case is affirmed on the opinion of the learned court below.